EDWARD H. KUBO, JR.  #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Narcotics Section

MARK A. INCIONG  CA BAR #163443
Assistant United States Attorney
PJKK Federal Building
300 Ala Moana Blvd., Room 6-100
Honolulu, HI 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email: mark.inciong@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00260 JMS |
| | ) | |
| Plaintiff, | ) | UNITED STATES' MOTION |
| | ) | TO IMPEACH DEFENDANT |
| v. | ) | PURSUANT TO RULE 609; |
| | ) | CERTIFICATE OF SERVICE |
| JAMES LOW, | ) | |
| | ) | TRIAL DATE: May 9, 2006 |
| Defendant. | ) | TIME: 9:00 a.m. |
| | ) | JUDGE: Hon. J. Michael |
| | ) | Seabright |

UNITED STATES' MOTION TO IMPEACH
DEFENDANT PURSUANT TO RULE 609

COMES NOW the United States of America, by and through Edward H. Kubo, Jr., United States Attorney, and Mark A. Inciong, Assistant United States Attorney, and hereby files its motion to impeach Defendant pursuant to Rule 609 should the Defendant testify at trial.  Said motion is based upon the files

and records of this case, together with the attached statement of facts and memorandum of points and authorities.

### I

### STATEMENT OF THE CASE

Defendant James Low is charged in a two-count indictment with conspiracy to distribute and possess, with intent to distribute, 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers; and possession, with intent to distribute, of 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(A).

### II

### STATEMENT OF FACTS

On June 8, 2005, Michael Silva was arrested for possessing, with intent to distribute, approximately 187 grams of methamphetamine.  In a post-Miranda statement, Silva explained that his source of methamphetamine was Defendant James Low. Silva further stated that three days prior to his arrest, Low had "fronted" Silva one pound of "ice" which Silva had picked up from Low at Low's Canterbury Place residence located at 1910 Ala Moana Boulevard, Apartment 10C, Honolulu, Hawaii.  Silva admitted that the ice found in his possession was the remainder of the one pound he obtained from Low.

Silva further explained that Low would "front" Silva a pound of ice for which Silva would later pay Low $20,000. Silva stated that he had met Low while they were cellmates in prison. Silva said after his release he ran into Low who propositioned Silva to distribute drugs for him. Silva said he accepted the offer and began distributing "ice" for Low. Silva said he would pick up "ice" from Low at his 2121 Algaroba Street, #901 residence as well as the Canterbury Place apartment and also at the McCully Village apartments. Silva added that Low drives a silver or white Toyota pickup and that Silva had seen large amounts of cash and drugs in both of Low's residences on Ala Moana Boulevard and Algaroba Street.

Silva then agreed to make a consensually recorded phone call to Low in order to arrange a meeting for Silva to give Low money he owed Low from previously "fronted" drugs and for Silva to pick up additional drugs. The phone call was made and Low and Silva agreed to meet at Low's apartment at 2121 Algaroba Street, #901. Silva was taken to that address by federal agents who arrested Defendant Low when he attempted to let Silva into the secured building.

Search warrants were executed on both of the aforementioned residences of Defendant Low. At the Algaroba Street apartment, pound quantities of "ice" were discovered along with a money counter and other drug distribution paraphernalia. A search of the Ala Moana Boulevard apartment yielded nearly $150,000 in cash

and over a pound of "ice."  A search warrant of a bedroom Low maintained at his parents' residence at 823 Onaha Street resulted in the seizure of $24,197.  Low's father stated that Defendant Low had purchased a plasma screen television, black leather recliner and several sculptures in the house despite not having a job.  Another search warrant executed on a safety deposit box belonging to Low revealed $20,000 in cash along with jewelry and watches.  Finally, a search warrant executed at a storage locker in the Defendant's name resulted in the discovery of four firearms and several hundred rounds of ammunition.

A criminal history search for Defendant Low revealed Low was convicted of Promoting a Dangerous Drug in the Third Degree, a felony drug offense, committed on or about March 1, 1995, in violation of Section 712-1243 of the Hawaii Revised Statues, in the criminal case entitled State of Hawaii vs. James T. Low, Circuit Court of the First Circuit, Criminal Case Number 95-1920, and was sentenced on July 31, 1996 to a five year period of probation.  On July 7, 1998, Defendant's probation was revoked and Defendant was sentenced to five years in jail

Low was again convicted of Promoting a Dangerous Drug in the Third Degree, a felony drug offense, committed on or about January 23, 1995, in violation of Section 712-1243 of the Hawaii Revised Statues, in the criminal case entitled State of Hawaii vs. James T. Low, Circuit Court of the First Circuit, Criminal Case Number 95-1922, and was sentenced on July 31, 1996 to a five

year period of probation.  On July 7, 1998, Defendant's probation was revoked and Defendant was sentenced to five years in jail.

Defendant Low was convicted for a third time of Promoting a Dangerous Drug in the Third Degree, a felony drug offense, committed on or about January 6, 1997, in violation of Section 712-1243 of the Hawaii Revised Statues, in the criminal case entitled <u>State of Hawaii vs. James Torao Low</u>, Circuit Court of the First Circuit, Criminal Case Number 97-00068, and was sentenced on July 7, 1998 to five years in jail.

### III

### POINTS AND AUTHORITIES

**C.  Defendant's Prior Felony Drug Convictions are Admissible for Impeachment.**

The United States asks this Court to permit impeachment of Defendant with his three State of Hawaii felony convictions from 1995 and 1997 for promoting a dangerous drug in the third degree.

> Federal Rule of Evidence 609(a) provides in pertinent part:
>
> For purposes of attacking the credibility of a witness, (1) evidence that a witness other than an accused has been convicted of a crime shall be admitted, subject to Rule 403, if the crime was punishable by death or imprisonment in excess of one year under the law under which the witness was convicted, and evidence that an accused has been convicted of such a crime shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused; and (2) evidence that any witness has been convicted of a crime shall be

>admitted if it involved dishonesty or false
>statement, regardless of the punishment.

    1.   <u>Browne Factors of Admissibility</u>

The Ninth Circuit has listed five factors that the district court should balance in making the determination required by Rule 609. <u>United States v. Browne</u>, 829 F.2d 760 (9th Cir. 1987). Specifically, the court must consider: (1) the impeachment value of the prior crime; (2) the point in time of the conviction and the witness' subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the defendant's credibility. <u>Id.</u> at 762-763.

The Ninth Circuit applied these factors in <u>United States v. Perkins</u>, and concluded that "the admission under Rule 609 of a bank robbery conviction in a bank robbery trial is not an abuse of discretion when the conviction serves a proper impeachment purpose, such as when the defendant's testimony and credibility are central to the case." 937 F.2d 1397, 1406 (9th Cir. 1990). <u>See</u> <u>also</u>, <u>Browne</u>, 829 F.2d at 764 (holding that the district court did not abuse its discretion in admitting impeachment evidence of defendant's prior conviction for bank robbery during a bank robbery trial); <u>United States v. Charmley</u>, 764 F.2d 675, 677 (9th Cir. 1985) (upholding trial court's admission of prior convictions for both bank robbery and forgery in bank robbery trial); <u>United States v. Oaxaca</u>, 569 F.2d 518, 527 (9th Cir.

6

1978) (allowing impeachment with evidence of prior burglary and bank robbery).

In this case, it is anticipated that the Defendant will dispute at least one of the elements of the offense, by claiming he had no knowledge of the methamphetamine found in his residence. Thus, his credibility will be squarely at issue. If Defendant chooses to testify at trial, the United States should not be prevented from demonstrating Defendant's lack of trustworthiness by introducing his prior felony convictions.

An analysis of the five factors enumerated in Browne militates for the admission of Defendant's prior conviction for impeachment purposes. First, Defendant's felony convictions for promoting a dangerous drug in the third degree have a significant impeachment value as to his believability and credibility should Defendant take the stand. Although the conviction did not involve truth or veracity, Congress made the decision to allow impeachment even by felonies which did not involve dishonesty. In fact, the Ninth Circuit has approved the use of a felony possession of heroin conviction for impeachment purposes. United States v. Hursh, 217 F.3d 761, 768 (9th Cir. 2000).

Second, Defendant's convictions occurred in September, 1995 and January, 1997. Clearly, Defendant's convictions in all three offenses occurred less than ten years before his instant arrest (May, 2005) and trial date and thus, is admissible pursuant to Rule 609(b) which states that evidence of a felony conviction is

admissible if no more than ten years has elapsed since the date of conviction or of the release of the witness from the confinement imposed, whichever is the later date.

The Defendant may argue that admission of more than one of his prior felony drug convictions would be overly prejudicial. However, the interests of justice demand that the jury be informed that Defendant is not an individual who "made one mistake a long time ago" and has led a law abiding life ever since. Rather, the probative value of admitting all the convictions is that the jury will have a much more accurate picture of the Defendant's credibility: that is, an individual who committed felony drug convictions on more than one occasion. This is imperative in that the Defendant is basically a career criminal who has a criminal history the vast majority of which the jury will never hear about. To allow the Defendant to present himself to the jury as an individual who "made one mistake" or "who had a drug problem which he has since conquered" would not be in the interests of justice. Rather, such a portrayal of this Defendant would perpetuate a fraud on the jury. As such, the probative value of each of the prior felony drug convictions easily and substantially outweighs any possible prejudice to the Defendant and the interests of justice demand its admission.

Third, the instant offense and Defendant's prior convictions have similarities. However, with the appropriate

jury instruction there is little danger that the jury would somehow use Defendant's prior convictions to infer propensity to commit the instant offense.  As such, the United States seeks to introduce evidence of the events leading to those convictions in its case-in-chief pursuant to Rule 404(b) as indicated in a separate motion.  Should this Court disallow that 404(b) evidence, the Court may still "sanitize" the felony convictions and not allow the jury to know the exact nature of the felony. See Hursh, 217 F.3d at 768.

With respect to the fourth factor -- the importance of Defendant's testimony -- one cannot argue that Defendant's testimony lacks importance.  He is the only possible witness who can testify to his state of mind and whether he had knowledge of the methamphetamine in his residence.

Finally, the centrality of the Defendant's credibility, should the Defendant decide to testify, overwhelmingly favors admission of his prior conviction.  If Defendant takes the stand and offers conflicting testimony to that presented by the prosecution, the jury must determine which version of events is more believable.  To resolve the conflict between the government's evidence and the Defendant's testimony, the Defendant must be subject to impeachment evidence, such as his prior convictions which bear greatly on his credibility.

Each of the five factors enumerated by the Ninth Circuit in <u>Browne</u> favors the admission of Defendant's prior convictions to impeach his credibility if Defendant elects to testify.

**IV**

**CONCLUSION**

Based on all of the above, the United States' motion to impeach Defendant with his prior felony drug convictions pursuant to Federal Rule of Evidence 609 should be granted.

DATED: April 12, 2006, at Honolulu, Hawaii.

                                      EDWARD H. KUBO, JR.
                                      United States Attorney

                              By <u>/s/ Mark A. Inciong</u>
                                  MARK A. INCIONG
                                  Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Served by First Class Mail:

JAMES LOW                                            April 12, 2006
92234-022
Federal Detention Center
P. O. Box 30080
Honolulu, HI 96820
Defendant PRO SE

Served Electronically through CM/ECF:

RICHARD S. KAWANA, ESQ.                              April 12, 2006
rskawana@prodigy.net

DATED:  Honolulu, Hawaii, April 12, 2006.

                                        /s/ M. Derby-Taufa'asau