EDWARD H. KUBO, JR.  #2499
United States Attorney
District of Hawaii

FLORENCE T. NAKAKUNI #2286
Chief, Narcotics Section

MARK A. INCIONG  CA BAR #163443
Assistant United States Attorney
PJKK Federal Building
300 Ala Moana Blvd., Room 6-100
Honolulu, HI 96850
Telephone: (808) 541-2850
Facsimile: (808) 541-2958
Email: mark.inciong@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| UNITED STATES OF AMERICA, | ) | CR. NO. 05-00260 JMS |
|---|---|---|
| Plaintiff, | ) | UNITED STATES MOTIONS IN LIMINE TO: |
| v. | ) | |
| JAMES LOW, | ) | (1) LIMIT DEFENDANT'S COMMENTS IN OPENING STATEMENT TO THOSE WHICH WILL BE PROVEN AT TRIAL; |
| Defendant. | ) | (2) PRECLUDE OR LIMIT THE TESTIMONY OF DEFENSE WITNESSES WHO HAVE NO PERSONAL KNOWLEDGE OF ANY RELEVANT EVIDENCE; |
| | ) | (3) PRECLUDE IMPROPER CLOSING ARGUMENT ON PENALTY OR SYMPATHY; AND |
| | ) | (4) ADMIT EXPERT TESTIMONY |
| | ) | CERTIFICATE OF SERVICE |
| | ) | TRIAL DATE:  May 9, 2006
TIME:  9:00 a.m.
JUDGE: Hon. J. Michael Seabright |

**UNITED STATES' MOTIONS IN LIMINE**

COMES NOW the United States of America, by and through Edward H. Kubo, Jr., United States Attorney, and Mark A. Inciong, Assistant United States Attorney, and hereby files its motions in limine to be heard prior to trial in the above-referenced matter.  Said motions are based upon the files and records of this case, together with the attached statement of facts and memorandum of points and authorities.

I

**STATEMENT OF THE CASE**

Defendant James Low is charged in a two-count indicment with conspiracy to distribute and possess, with intent to distribute, 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers; and possession, with intent to distribute, of 50 grams or more of methamphetamine, its salts, isomers and salts of its isomers, in violation of Title 21, United States Code, Sections 846, 841(a)(1) and (b)(1)(A).

II

**STATEMENT OF FACTS**

On June 8, 2005, Michael Silva was arrested for possessing, with intent to distribute, approximately 187 grams of methamphetamine.  In a post-Miranda statement, Silva explained that his source of methamphetamine was Defendant James Low. Silva further stated that three days prior to his arrest, Low had

"fronted" Silva one pound of "ice" which Silva had picked up from Low at Low's Canterbury Place residence located at 1910 Ala Moana Boulevard, Apartment 10C, Honolulu, Hawaii. Silva admitted that the ice found in his possession was the remainder of the one pound he obtained from Low.

Silva further explained that Low would "front" Silva a pound of ice for which Silva would later pay Low $20,000. Silva stated that he had met Low while they were cellmates in prison. Silva said after his release he ran into Low who propositioned Silva to distribute drugs for him. Silva said he accepted the offer and began distributing "ice" for Low. Silva said he would pick up "ice" from Low at his 2121 Algaroba Street, #901 residence as well as the Canterbury Place apartment and also at the McCully Village apartments. Silva added that Low drives a silver or white Toyota pickup and that Silva had seen large amounts of cash and drugs in both of Low's residences on Ala Moana Boulevard and Algaroba Street.

Silva then agreed to make a consensually recorded phone call to Low in order to arrange a meeting for Silva to give Low money he owed Low from previously "fronted" drugs and for Silva to pick up additional drugs. The phone call was made and Low and Silva agreed to meet at Low's apartment at 2121 Algaroba Street, #901. Silva was taken to that address by federal agents who arrested Defendant Low when he attempted to let Silva into the secured building.

Search warrants were executed on both of the aforementioned residences of Defendant Low.  At the Algaroba Street apartment, pound quantities of "ice" were discovered along with a money counter and other drug distribution paraphernalia.  A search of the Ala Moana Boulevard apartment yielded nearly $150,000 in cash and over a pound of "ice."  A search warrant of a bedroom Low maintained at his parents' residence at 823 Onaha Street resulted in the seizure of $24,197.  Low's father stated that Defendant Low had purchased a plasma screen television, black leather recliner and several sculptures in the house despite not having a job.  Another search warrant executed on a safety deposit box belonging to Low revealed $20,000 in cash along with jewelry and watches.  Finally, a search warrant executed at a storage locker in the Defendant's name resulted in the discovery of four firearms and several hundred rounds of ammunition.

### III

### POINTS AND AUTHORITIES

A.  THE COURT SHOULD LIMIT DEFENDANT'S OPENING STATEMENT TO MATTERS THAT WILL BE PROVEN BY ADMISSIBLE EVIDENCE.

The United States anticipates that, at trial, the Defendant will offer the defense that he was "set up" and "entrapped" into conspiring to distribute and possess, with intent to distribute, methamphetamine.  The United States requests that this Court caution the defense against commenting on and presenting this

defense in its opening statement unless it has admissible evidence to present at trial in support of such a defense.

In United States v. Dinitz, 424 U.S. 600, 96 S.Ct. 1075 (1976), Chief Justice Burger wrote:

> "An opening statement has a narrow purpose and scope. It is to state what evidence will be presented, to make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole; it is not an occasion for argument. To make statements which will not or cannot be supported by proof is, if it relates to significant elements of the case, professional misconduct. Moreover, it is fundamentally unfair to an opposing party to allow an attorney, with the standing and prestige inherent in being an officer of the court, to present to the jury statements not susceptible of proof but intended to influence the jury in reaching a verdict." Dinitz, 424 U.S. at 612, 96 S.Ct. At 1082.

Here, although the Defendant will be acting as his own attorney, the mandate of Dinitz is no less applicable. Defendant will be under all the same constraints, rules and obligations as if he were a licensed attorney. While there is no doubt that Defendant has an absolute right to choose not to testify at trial, that right cannot be used as a shield behind which he can hide from the responsibility to only comment in opening statement on admissible evidence that will be introduced at trial.

The United States Supreme Court was so concerned with that danger that in Arizona v. George Washington, Jr., 434 U.S. 497, 98 S.Ct. 824 (1978), it announced that should such improper remarks be made by defense counsel, the trial judge has the power and right to declare a mistrial without the consent of the

defense.  Further, any subsequent retrials are not barred by double jeopardy.

While the primary focus in <u>Arizona v. George Washington, Jr.</u> was whether the trial court had made the requisite finding of "manifest necessity" in declaring the mistrial in order to bar double jeopardy, a substantial portion of the opinion discusses the rationale behind why a mistrial is appropriate to remedy the perils created when defense counsel makes unsubstantiated remarks in opening statement.  <u>Arizona v. George Washington, Jr.</u>, 434 U.S. 510-514, 98 S.Ct. 832-835.

"An improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal.  Indeed, such statements create a risk, often not present in the individual juror bias situation[1/] that the entire panel may be tainted.  The trial judge,of course, may instruct the jury to disregard the improper comment.  In extreme cases, he may discipline counsel, or even remove him from the trial as he did in <u>United States v. Dinitz</u>, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267.  Those actions, however, will not necessarily remove the risk of bias that may be created by improper argument.  Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power

---

For example, if there is a suggestion of individual juror bias, it may be possible to replace that juror with an alternate. <u>Arizona v. Washington</u>, 434 U.S. 512, 98 S.Ct. 834 [FN31].

6

to declare a mistrial in appropriate cases." Arizona v. George Washington, Jr., 434 U.S. at 512-513, 98 S.Ct. at 834.

The Ninth Circuit has followed this edict from the highest court stating, "Opening argument, like closing, should not refer to matters that are not to be presented as evidence." United States v. Taren-Palma, 997 F.2d 525, 532 (9th Cir. 1993).

Based on the above case law, the United States respectfully requests this Court to enter an order directing Defendant, in making his opening statement, to comment only on those matters which will be proven by admissible evidence at trial. Should Defendant disobey that order, the United States will request that this Court disallow Defendant from further self-representation and to immediately order Defendant's standby counsel to step in and represent Defendant for the remainder of the trial. If the violation relates to a significant element of the case, the United States will request the Court to declare a mistrial after making a specific finding that the mistrial is a manifest necessity. Similarly, the United States also respectfully requests that this Court admonish Defendant from arguing facts not in evidence in closing argument.

> B. DEFENDANT SHOULD BE PRECLUDED FROM CALLING WITNESSES TO TESTIFY ON MATTERS WHICH THEY HAVE NO PERSONAL KNOWLEDGE

The United States also anticipates the possibility that defense witnesses may be called to testify regarding irrelevant matters or aspects of the case in which they have no firsthand

7

knowledge allowing Defendant to "testify" without taking the stand.

Rule 801 of the Federal Rules of Evidence states, "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Clearly, attempting to elicit testimony from defense witnesses as to the state of mind or knowledge of the Defendant is improper and the United States respectfully requests a pretrial order directing the Defendant not to attempt these tactics at trial.

For this reason, the United States requests the Court to order Defendant to refrain from such questioning at the trial. Should it appear Defendant is drawing near to eliciting testimony which lacks foundation and would, thus, be hearsay, the United States requests the opportunity to voir dire the witness, outside the presence of the jury, to prevent the jury from being tainted by hearing inadmissible testimony.  Similarly, if the Defendant himself chooses to testify and attempts to introduce hearsay or other inadmissible evidence, the United States would request an identical order prohibiting Defendant from attempting to testify to inadmissible evidence.

    C.    <u>DEFENDANT SHOULD BE PRECLUDED FROM MAKING ANY REFERENCES TO PENALTY OR SYMPATHY AT TRIAL OR IN CLOSING ARGUMENT</u>.

References to the Defendant's age, the possibility of facing "life", "mandatory life", "prison," or other references to

8

penalty and any other attempts to appeal to the jury's sense of sympathy and pity in closing argument are improper and impermissible and the United States requests this Court to enter a pretrial order forbidding Defendant from raising this issue in closing argument or any other point in the trial.

The inappropriateness of Defendant attempting to appeal to a jury's sympathy by presenting information of possible punishment is a fundamental tenet of trial practice at any level. Not only is the principle that jurors are not to consider penalty canonized in the Ninth Circuit Manual of Model Criminal Jury Instructions at §7.3, the comment to that model instruction even goes on to state that instructing jurors that they are not to consider penalty is ordinarily inappropriate unless jurors have received information about the possible punishment. <u>Ninth Circuit Manual of Mode Criminal Jury Instructions</u>, §7.3 (1997 Edition - West Publishing Co.)

More importantly, the United States Supreme Court, in a case arising out a habeas corpus action from the Ninth Circuit Court of Appeals, upheld the state trial court's finding of summary contempt of defense counsel for raising possible punishment before the jury. <u>Pounders v. Watson</u>, 521 U.S. 982, 117 S.Ct. 2359, 138 L.Ed.2d 976 (1997). There, despite the court's statement that possible punishment "is not a subject that's open for discussion," defense counsel elicited the penalty the defendant was facing during her direct examination of him.

Pounders, 117 S.Ct. at 2360.  The court then found her in contempt for the violation, stating, "I think she has permanently prejudiced this jury in favor of her client," Pounders, at 2361, and the Supreme Court affirmed the court's finding of contempt. Pounders, at 2363.

Clearly, such arguments worthy of findings of contempt subsequently endorsed by the Supreme Court have no place at trial in the instant matter and the United States respectfully requests this Court to enter an appropriate pretrial order.

    D.    EXPERT DRUG TESTIMONY SHOULD BE ADMITTED.

If specialized knowledge will assist the trier-of-fact in understanding the evidence or determining a fact in issue, a qualified expert witness may provide opinion testimony on the issue in question.  Fed.R.Evid. 702.  The trial court has broad discretion to admit expert testimony.  See, e.g., United States v. Alonso, 48 F.3d 1536, 1539 (9th Cir. 1995).  An expert may base his opinion on hearsay or facts not in evidence where the facts or data relied upon are of the type reasonably relied upon by experts in the field.  Fed.R.Evid. 703.  In addition, an expert may provide opinion testimony even if it embraces an ultimate issue to be decided by the trier-of-fact.  Fed.R.Evid. 704.

1.   <u>Value of the Methamphetamine</u>

The United States intends to present expert testimony about the quantity, wholesale value, and street value of the methamphetamine seized in this case.  The quantity and value of the methamphetamine circumstantially demonstrates the Defendant's knowledge and involvement in the conspiracy, and that the Defendant possessed the methamphetamine with the intent to distribute it.  Knowledge and intent are elements of the offenses charged in this case.

The Ninth Circuit permits the use of such expert testimony.  In <u>United States v. Ogbuehi</u>, 18 F.3d 807, 812 (9th Cir. 1994), for instance, the Defendant was charged with the importation of heroin after he and others attempted to smuggle approximately 2.5 pounds of heroin across the border.  At trial, the Government introduced the expert testimony of a DEA agent as to the street value of the heroin, assuming it had been cut repeatedly and sold on the street.  The Ninth Circuit held that agents can testify to the street value of narcotics and that counsel can argue reasonable inferences from such testimony.  <u>See</u> <u>also</u> <u>United States v. Savinovich</u>, 845 F.2d 834, 838 (9th Cir. 1988) (price, quantity, and quality of narcotics is relevant to defendant's intent to distribute).

  2. The Court Should Permit the Forensic Chemists' Testimony as to the Findings from the Testing of the Contraband in a Laboratory.

  The United States will seek to have a forensic chemist from the Drug Enforcement Administration testify as to the identity of the substance seized from the Defendant's residences. The United States expects the chemist to testify that laboratory examination confirmed that the contraband is methamphetamine. This testimony is permitted under Rule 702 of the Federal Rules of Procedure, which allows witnesses qualified as experts to testify as to scientific or technical knowledge that "will assist the trier of fact to understand the evidence."

  Accordingly, the United States respectfully requests this Court to allow expert testimony which explains the above.

## IV

## CONCLUSION

  Based on all of the above, the United States respectfully requests that its motions in limine be granted.

  DATED: April 12, 2006, at Honolulu, Hawaii.

          EDWARD H. KUBO, JR.
          United States Attorney


         By /s/ Mark A. Inciong
           MARK A. INCIONG
           Assistant U.S. Attorney

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at their last known addresses:

Served by First Class Mail:

JAMES LOW                                            April 12, 2006
92234-022
Federal Detention Center
P. O. Box 30080
Honolulu, HI 96820
Defendant PRO SE


Served Electronically through CM/ECF:

RICHARD S. KAWANA, ESQ.                              April 12, 2006
[rskawana@prodigy.net](rskawana@prodigy.net)


DATED:  Honolulu, Hawaii, April 12, 2006.


                                        /s/ M. Derby-Taufa'asau